IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMANDA G., | CV 20–166–M–DWM |
| Plaintiff, | |
| v. | OPINION and ORDER |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits under Title II of the Social Security Act. The Commissioner's denial of benefits is reversed and remanded.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the Administrative Law Judge's ("ALJ") findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Id.* (internal quotation marks omitted). It is "such relevant evidence as a reasonable

1

mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the ALJ. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless; that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (internal quotation marks omitted).

A claimant for disability benefits bears the burden of proving that disability exists. 42 U.S.C. § 423(d)(5). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if her impairments are so severe that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other substantial gainful activity in the national economy. 42 U.S.C. § 423(d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

2

In determining disability, the ALJ follows a five-step sequential evaluation process. *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520(a)(4)(i)-(v). The process begins, at the first and second steps, "by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement." *Id.* "If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functioning capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work." *Id.* At step five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1098. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

## BACKGROUND

On March 2, 2017, Plaintiff filed an application for disability insurance benefits as of October 31, 2016. *See* AR 205–06, 231–33. Her claim was based on migraine headaches, neck/back pain, depression, anxiety, post-traumatic stress disorder ("PTSD"), and insomnia. AR 235, 238–54, 333–38, 342–49, 354–61. Her claim was initially denied on July 20, 2017, and upon reconsideration on April

24, 2018.  *See* AR 44.  A hearing was held on August 13, 2019 before ALJ

Michele M. Kelley.  AR 1072–1109.  Plaintiff testified, as did vocational expert

Karen Black.  *See id.*  Plaintiff was represented by an attorney.  *Id.*

On September 11, 2019, the ALJ issued a decision denying benefits.  AR

44–58.[1]  At step one, the ALJ found Plaintiff met the insured status requirements of

the Social Security Act through September 30, 2019.  AR 23.  She also found

Plaintiff has not engaged in substantial gainful activity since October 31, 2016, the

alleged disability onset date.  AR 23.  At step two, the ALJ found Plaintiff had the

following severe impairments: migraine headaches, depression, anxiety, and

PTSD.  AR 23.  The ALJ also found that Plaintiff suffered from allergic rhinitis

and cervicalgia but that these conditions were non-severe.  AR 23–24.  At step

three, the ALJ found Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed

impairments.  AR 24–26.

The ALJ found Plaintiff had a residual functioning capacity ("RFC") to

perform light work, specifically:

> The claimant can lift, carry, push, or pull up to only 20 pounds
> occasionally and 10 pounds frequently.  The claimant can walk or stand
> 6 hours, and sit for 6 hours, in an 8-hour workday.  The claimant can
> no more than frequently climb ramps and stairs.  The claimant can no

---

[1] The decision was later amended to remove all reference to Exhibit 30F, which
included medical records belonging to a different individual.  *See* AR 21.  The
amended ALJ decision can be found at AR 20–34.

more than frequently balance, kneel, crouch, or crawl. The claimant can only occasionally climb ladders, ropes, and scaffolds. The claimant can only occasionally stoop. The claimant must avoid concentrated exposure to noise . . . . The claimant can understand, remember, and carry out simple tasks. The claimant can maintain attention, concentration, persistence, and pace for such 8-hour workdays and 40-hour workweeks. The claimant can tolerate only occasional interaction with supervisors and coworkers. The claimant can tolerate only occasional interaction with the public, but should not work directly with the public as part of her work duties. The claimant can tolerate usual simple work situations and can tolerate changes in her routine work setting. Finally, the claimant should have the option of wearing shaded lenses and or a hat or visor at work.

AR 26 (footnote omitted). Based on this RFC, the ALJ determined at step four that Plaintiff cannot perform any past relevant work. AR 32. But, at step five, the ALJ found that Plaintiff could perform other work existing in the national economy—office helper, mail clerk, and clothing presser—despite the above mental and physical limitations. AR 33. The ALJ therefore concluded that Plaintiff was not disabled. AR 34.

On March 4, 2021, the Appeals Council denied Plaintiff's request for review, AR 1–3, making it final. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). On November 18, 2020, Plaintiff appealed that decision to this Court. (Doc. 2.) The Commissioner filed the certified administrative record on March 25, 2021, (*see* Doc. 9), and supplemented it on July 7, 2021, (*see* Doc. 15). The matter was fully briefed as of October 5, 2021. (*See* Docs. 16, 17, 18.)

ANALYSIS

Plaintiff challenges the ALJ's denial of disability benefits on multiple fronts. Ultimately, while many of the ALJ's determinations are supported by substantial evidence, remand is necessary to address two primary issues: the ALJ's assessment of certain "other source" evidence and her assessment of the Listings.

## I.   Severity

Plaintiff first argues that the ALJ erred by failing to find that her neck and back pain were severe impairments at step two of the sequential analysis. A severe impairment is any medically determined physical or mental impairment that lasts or is expected to last for a period of at least twelve months, 20 C.F.R. § 404.1520(a)(4)(ii), that "significantly limits [a claimant's] physical or mental ability to do basic work activities," *id.* § 404.1520(c). *See id.* § 404.1522(a). Although the severity requirement is considered a "de minimis screening device used to dispose of groundless claims," *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotation marks and alteration omitted), "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 404.1521.

Here, the ALJ recognized Plaintiff's cervicalgia, but concluded that it was not severe because a 2016 MRI returned normal results and Plaintiff finds relief from physical therapy. AR 24. More importantly, the ALJ noted that "the record

6

shows that the claimant's neck pain contributes to her migraines, but—alone—does not meet the durational, intensity, or limitation requirements of a severe impairment." AR 24. None of Plaintiff's record citations undercut that conclusion. As argued by the Commissioner, at least four of the cited records pre-date the alleged disability onset date of October 2016. *See* AR 445–46 (dated 12/14/15), 459 (dated 10/15/15), 488–90 (dated 11/22/15), 461–62 (dated 12/13/15). As it relates specifically to back pain, the records indicate Plaintiff reported a history of back pain, but the medical evidence itself is limited to the fall of 2018. *See* AR 706–07, 711–12, 717–22, 734. And the records regarding neck pain indicate that such pain was generally considered in connection with Plaintiff's migraines. *See* AR 711–12, 717, 734, 964–65. As a result, the ALJ did not err in not including back or neck pain as independent severe impairments.

Even if the ALJ did err, however, any error at step two is generally considered harmless where, as here, the ALJ continues to the next step in the analysis because the ALJ must consider all disabling impairments—even those considered nonsevere—in assessing an RFC. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Here, the ALJ specifically considered Plaintiff's nonsevere impairments in her RFC, concluding that they "do not result in any additional sustained physical or mental limitations." AR 32.

7

## II.    Subjective Complaints

Plaintiff further argues that the ALJ erred in discounting her symptom allegations without providing specific, clear, and convincing reasons for doing so. Where, as here, an ALJ concludes a claimant is not malingering and has provided objective medical evidence of an underlying impairment that might reasonably produce the pain or other alleged symptoms, "the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter*, 806 F.3d at 493 (quotation marks omitted); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). Here, the ALJ rejected Plaintiff's subjective assessment of her symptoms on the grounds that they "exceed[] the objective medical evidence," AR 27, Plaintiff "finds relief with treatment[,] and she is able to maintain activities of daily living," AR 28. Plaintiff challenges only the ALJ's "daily living" analysis.

According to Plaintiff, "the ALJ inaccurately interpreted her activity level out-of-context and the records cited by the ALJ regarding her activity level actually support her testimony." (Doc. 16 at 27.) The ALJ identified six specific activities she believed undercut Plaintiff's alleged limitation: (1) Plaintiff fostered three children, *see* AR 691, 777; (2) Plaintiff traveled to California for a family reunion, AR 928; (3) Plaintiff cared for animals, *see* AR 247, 755, 974; (4) Plaintiff began working part-time at Wal-Mart, AR 816; (5) Plaintiff began

homeschooling her daughter, AR 755, 816; and (6) Plaintiff planned to have another child with a sperm donor, AR 928. *See* AR 28. While Plaintiff is correct that some of these records show both functionality and limitation, *see, e.g.*, AR 691 (indicating that her foster children cause her stress), "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation," *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). These daily activities, while limited, show more functionality than Plaintiff's testimony suggested, and that functionality—specifically working a part-time job—translates into a work setting. *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *see Ford*, 950 F.3d at 1156 ("An ALJ may consider work activity, including part-time work, in determining whether a claimant is disabled.").

They are also "incompatible with the severity of symptoms alleged." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Plaintiff stated that her migraines made it "impossible [for her] to perform any task for more than 2 hours" and she often stays in bed all day. *See* AR 342. She further testified that she cannot go out in public alone, AR 1086, and sleeps during the day, AR 1087. Although one need not be "utterly incapacitated" to be disabled, *see Vertigan v. Holder*, 260 F.3d 1044, 1050 (9th Cir. 2001), the record supports the ALJ's conclusion that Plaintiff's activities exceed her purported limitations, especially considering the ALJ's unassailed reliance on successful treatment measures in

9

conjunction with Plaintiff's activities.  *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v).

Ultimately, the ALJ relied on clear and convincing evidence that undercut Plaintiff's subjective assessment of her functional abilities.  Nevertheless, if the ALJ was to credit certain other source evidence on remand, as discussed below, it may be appropriate to revisit this conclusion.

## III.  Medical Evidence

Plaintiff argues that the ALJ improperly discounted the findings and functional assessments of her treating physicians and health care providers.  In response, the Commissioner insists that the ALJ properly summarized and interpreted the conflicting medical evidence in the record.  Plaintiff's challenge is persuasive as to one provider, nurse practitioner Sydney Seyfert.

In assessing disability, an ALJ may rely on the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Under the "treating physician rule,"[2] the ALJ is required to give deference to the treating physician as follows:

> As a general rule, a treating physician's opinion is entitled to substantial weight.  Nevertheless, the ALJ need not accept the opinion of a treating

---

[2] The 2017 regulations promulgated by the Social Security Administration eliminate the deference given to treating physicians for claims filed after March 27, 2017.  *See* 20 C.F.R. § 416.920c(a).

> physician.  If a treating physician's opinion is not contradicted by other
> evidence in the record, the ALJ may reject it only for clear and
> convincing reasons supported by substantial evidence in the record.
> But if the treating doctor's opinion is contradicted by another doctor,
> the ALJ may discount the treating physician's opinion by giving
> specific and legitimate reasons that are supported by substantial
> evidence in the record.  The ALJ need not accept the opinion of any
> physician, including a treating physician, if that opinion is brief,
> conclusory, and inadequately supported by clinical findings.

*Ford*, 950 F.3d at 1154 (quotation marks, alterations, and citations omitted).  In

addition, an ALJ may reject statements from "other sources," such as nurse

practitioners or therapists, by giving reasons "germane to each witness for doing

so."  *Dale v. Colvin*, 823 F.3d 981, 943 (9th Cir. 2016); *see also Revels v.*

*Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017).  The ALJ can meet its burden "by

setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating his interpretation thereof, and making findings."  *Treviso*, 871

F.3d at 675 (quotation marks omitted).

   According to Plaintiff, the four[3] treating and examining sources provided

opinion evidence that undermine the ALJ's RFC and support a finding of

disability.  These opinions are addressed in turn.

## A.    Elizabeth Horewitz, LCSW, Ph.D.

   On August 26, 2015, Dr. Horewitz administered a mental status examination

---

[3] Plaintiff states that there are "five" medical sources at issue.  (*See* Doc. 16 at 6.)
The brief, however, only address four providers.

11

of Plaintiff, allegedly diagnosing her with "depression" and designating her as "disabled." *See* AR 436–40.  As argued by Plaintiff, the ALJ did not address this evaluation.  But, as argued by the Commissioner, that omission was not error.  Not only do Dr. Horewitz's treatment notes predate the alleged onset date by over a year, *see Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (medical evidence predating relevant period is of "limited relevance"), but her alleged "disability" opinion is merely a background note that "disability" is the reason Plaintiff is "not currently employed."  *See* AR 438.  Thus, even if Dr. Horewitz's disability conclusion had any relevance, *but see* 20 C.F.R. § 404.1527(d)(3), Dr. Horewitz did not render such an opinion so it is not significant.  Likewise, the other information relied on by Plaintiff, (*see* Doc. 18 at 3), also regards Plaintiff's recounting of her history and limitations, and it is not a medical opinion from the provider.  As a result, these records were not a "medical opinion" requiring evaluation.  *See* 20 C.F.R. § 404.1527(c).

**B.    David Shenick, L.Ac.**

Shenick, a licensed acupuncturist, treated Plaintiff between February 17, 2017 and April 6, 2017 for her migraines.  **AR 542.**  His records state that, as a "work limitation," Plaintiff "should avoid excessive concentration and stress so nervous system healing can take place."  **AR 541.**  As was the case with Dr. Horewitz, the ALJ did not address Shenick's "opinion."  Nevertheless, as argued

12

by the Commissioner, to the extent Shenick's statement amounts to an opinion, the resulting RFC is not inconsistent with Shenick's proposed limitation of avoiding "excessive concentration and stress."  Thus, any error is harmless.

## C.     Jennifer Norstrom, LMFT

Norstrom was Plaintiff's therapist and she met with Plaintiff 20 times between January 9, 2017 and June 29, 2017.  *See* AR 521–40, 558–74.  Norstrom's records reflect Plaintiff having difficulty getting out of bed in the morning, *see, e.g.*, AR 521, difficulty sleeping, *see, e.g.*, AR 523, and feeling powerless and alone, *see, e.g.*, AR 527.  Plaintiff also reported a complicated relationship with her family and recalled experiences of neglect and abuse.  *See, e.g.*, AR 529. Norstrom also completed a "Mental Disorder Questionnaire Form" on March 24, 2017, wherein she found that Plaintiff's anxiety and depression interfered with her daily function.  *See* AR 496–500.  More specifically, Norstrom noted that Plaintiff's "level of anxiety and degree of panic attacks interfere with her ability to go grocery shopping on her own . . . [and] with regular residential maintenance and sometimes interfere with the ability to cook."  AR 498.

The ALJ rejected Norstrom's opinions on the grounds that they were "based on a personal interview with the claimant and a treatment history of only 2 months."  AR 30.  The ALJ further noted that "this opinion is not based on clinical evidence" and "no cognitive testing has been performed."  AR 30.  Finally, the

13

ALJ concluded that Norstrom's "assessment is vague regarding function-by-function abilities and limitations" and "inconsistent with the claimant's ability to care for herself, her child, and even temporarily, foster children." AR 30. Plaintiff argues that these reasons "are not fully accurate, and therefore not germane, reasons" for rejecting Norstrom's opinions (Doc. 16 at 9.)

First, Plaintiff argues that while the treatment period was limited, Norstrom saw Plaintiff 20 times, including 10 times before Norstrom filled out the state agency's questionnaire. That argument is persuasive. The ALJ's characterization of the treatment relationship as lasting "only 2 months" ignores the fact that Plaintiff saw Norstrom more than weekly during that time period for an hour at a time. As a result, despite the actual timeframe, Norstrom spent ten hours with Plaintiff before assessing her functional ability. This reason for rejecting her opinion is therefore unsupported in the record. Similarly, the ALJ's assessment of the opinion being "based on a personal interview" misrepresents the record as well. While the March 24, 2017 evaluation was based on an interview, it followed more than 9 in-person, hour-long treatment sessions. Additionally, the fact Norstrom did not provide cognitive testing is not relevant as Plaintiff's cognitive function is not at issue here.

Ultimately though, the ALJ's remaining reason for rejecting Norstrom's opinion—i.e., that her functional assessment of Plaintiff was vague and

contradicted other evidence in the record—is both germane and substantiated.  As discussed above, Norstrom opined that Plaintiff's anxiety and depression interfere with her ability to grocery shop, maintain her residence, and cook.  *See* AR 498. All of Norstrom's other opinions, however, are incredibly vague as they relate to particular tasks or functions.  For example, Norstrom stated that Plaintiff "is easily overwhelmed and suffers from migraines and panic attacks that make it very difficult to sustain herself in a work environment."  AR 499.  It is not clear from this evaluation what parts of a work environment would be unsustainable.  *See Ford*, 950 F.3d at 1156 (an ALJ may discount functional limitations based on vagueness).  Moreover, in that same evaluation, Norstrom also stated that Plaintiff "appears to be able to sustain focused attention," and that Plaintiff "appears to be able to communicate effectively with peers and family members when necessary." AR 499.  That opinion is more consistent with the ALJ's assessment of Plaintiff's daily activities, as discussed above.

Finally, the Commissioner persuasively argues that even if the ALJ had accepted all of Norstrom's limitations, they are not inconsistent with a limited work function, such as that assessed in Plaintiff's RFC.  As such, those limitations "are inconsequential to the ultimate non-disability determination."  (Doc. 17 at 12 (citing *Molina*, 674 F.3d at 1115).)

**D.      Sydney Seyfert, NP**

15

Seyfert, referred to by Plaintiff as her "psychiatric practitioner," (Doc. 16 at 13), is a nurse practitioner who treated Plaintiff 17 times between October 26, 2017 and May 24, 2019.  AR 587–615, 750–95, 928–32.  Seyfert repeatedly stated between September 11, 2018 and May 24, 2019 that "[g]iven [Plaintiff's] heavy psychiatric load, it is clear full-time gainful employment would not be reasonable."  AR 754, 758, 765, 767, 770, 776, 932; *see also* AR 795, 931.  On May 21, 2018, Seyfert also completed a disability form in which she limited Plaintiff to 10 hours of work per week and noted that she had a "poor" ability to accept instructions, respond appropriately to criticism from a supervisor, respond appropriately to changes in a routine work setting, and deal with normal work stress.  AR 783–84.  She also found that Plaintiff met the requirements for Listing 12.15 for "Trauma – and stress-related disorders."  AR 791–92.  On July 15, 2019, Seyfert completed a work capacity evaluation and opined that Plaintiff had "No useful ability to function" in 5 areas of work functioning and was "Unable to meet competitive standards" in 7 others.  AR 935–36.  She also opined that she expected Plaintiff to miss more than four days of work per month, AR 937, an opinion that the vocational expert testified would preclude all competitive work, *see* AR 1105–06.

The ALJ rejected Seyfert's opinions from the July 15, 2019 work capacity evaluation because they were provided  on a "check-box form," which the ALJ reasoned was "inherently less reliable than evidence based function-by-function

analysis" and because it was "inconsistent with the claimant's ability to work,

attend school, manage her own affairs, or care for her children." AR 31. Plaintiff

argues that these are not germane reasons. Plaintiff is correct.

As recently recognized by the Ninth Circuit, "[t]he Social Security

regulations provide an out-dated view that consider a nurse practitioner as an

'other source.'" *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Similar to

the situation in *Popa*, "[t]he ALJ's decision to disregard [Seyfert]'s testimony

makes little sense in light of the prominent role that [Seyfert] played in [Plaintiff]'s

medical treatment." *Id.* The record here shows that Plaintiff met with Seyfert

approximately once a month for 18 months. Not only did Seyfert regularly visit

with Plaintiff, but she performed a thorough review of Plaintiff's mental history.

*See, e.g.*, AR 764 (describing Plaintiff as having "probably one of the most

extensive trauma histories I've ever seen"). While the ALJ's determination is

supported by the fact that the record is mixed as to Plaintiff's daily functionality,

*compare* AR 928 (Plaintiff enrolling in school and successfully treating migraines)

*with* AR 750 (Plaintiff's medications are exacerbating her inability to function), it

is undisputed that Plaintiff's migraines are intermittent and that mental health

symptoms "wax and wane in the course of treatment," *cf. Garrison v. Colvin*, 759

F.3d 995, 1017 (9th Cir. 2014) (discussing subjective symptoms); *see also Revels*,

874 F.3d at 667–68 (finding ALJ erred in failing to consider fact that claimant

17

"could complete only some of the tasks in a single day and regularly needed to take breaks"). Seyfert also specifically noted Plaintiff could not maintain the 10-hour work week required to maintain her TANF benefits. *See, e.g.*, AR 788, 795.

Ultimately, Seyfert's treatment notes provide specific information about Plaintiff's impairments. The fact Seyfert used a "check-box" form to summarize her functionality findings is therefore not a "germane" reason for rejecting them. *See Popa*, 872 F.3d at 907. Nor is that error harmless in light of the vocational experts' testimony and that fact that while the record is mixed on Plaintiff's daily function as discussed above, if the ALJ were to credit Seyfert's testimony, the ALJ may conclude that the ebb and flow of Plaintiff's impairments allow her to live, but not to work. Additionally, Seyfert's opinions, if accepted, may bear on whether Plaintiff meets the requirements of Listing 12.15. As a result, remand is necessary.

### E.    State Examiners

Plaintiff is also critical of the ALJ's reliance on the state examiners, William Fernandez, MD (who did not examine Plaintiff but reviewed extensive medical records), and Robert Tang, MD (who examined Plaintiff but did not review as many records). *See* AR 29–30. Although the ALJ did not error in giving weight to these opinions, they could support a finding that that the intermittent nature of Plaintiff's migraines and mental health issues prevent her from engaging in meaningful employment. For example, Dr. Fernandez recognizes that Plaintiff

18

"does have more than weekly headaches" but then states that "the record isn't clear how often she is having migraine headaches themselves." *See* AR 125. Dr. Tang also recognizes the intermittent nature of her functionality, stating: "When not having headaches, [Plaintiff] can complete house chore duties and yard duties." AR 543.

## IV.     The Listings

At step three of the ALJ's sequential evaluation, the claimant can establish disability if she proves that her impairments meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter App. 1). *Kennedy*, 738 F.3d at 1175–76. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Id.* at 1176 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). Put differently, "[t]he listings define impairments that would prevent an adult, regardless of his age, education or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Zebley*, 493 U.S. at 532 (quoting 20 C.F.R. § 416.925(a) (1989)).

### A.     Migraines

Recognizing that there is no specific listing for headaches, the ALJ considered Plaintiff's migraines under 11.00 (neurological impairments), concluding:

19

> There is no evidence of epilepsy, brain tumors, persistent
> disorganization of motor function, multiple sclerosis, or other evidence
> of central nervous system dysfunction responsible for claimant's
> migraines. Therefore, the undersigned finds the claimant's migraines
> do not meet or equal the requisite criterial of any listed impairment.

AR 24. This conclusion is error for two reasons. First, as argued by Plaintiff,

"[t]he point of determining whether [Plaintiff's] migraines are equivalent to a

neurological listing in the 11.00 series of the Listing is not whether any such

Listings were <u>responsible</u> for causing her migraines, but rather whether her

migraine headaches are equivalent in severity and impact as those listed in 11.00."

(Doc. 16 at 19.) Thus, Plaintiff's migraines need not cause a listed impairment to

meet the requirements of a listed impairment.

Second, courts and the Social Security Administration have previously

determined that Listing 11.02 is "the most analogous listing for considering

medical equivalence for migraine headaches." *Rader v. Comm'r of Soc. Sec.*, 2018

WL 4087988, at *4 (D. Idaho Aug. 27, 2018) (quotation marks omitted) (collecting

cases). Listing 11.02 requires three elements: "(1) a detailed documentation of

pain and resultant symptoms; (2) occurrence of the impairment at least twice a

week during the period of three consecutive months of prescribed treatment; and

(3) that the impairment significantly alters a claimant's awareness or daily activity.

*Id.* at *6. Here, the ALJ did not analyze or mention 11.02. That omission is error.

*See id.* at *4 ("[A]n ALJ's failure to specifically consider Listing 11.02 constitutes

legal error when a claimant's migraine headaches w[ere] found to be a severe

impairment at step two."). Contrary to the Commissioner's argument, Plaintiff has

proffered evidence showing that her impairment may equal a listing, *see Burch v.*

*Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), and the Court is constrained to review

only the reasons stated by the ALJ for the decision, not those proffered by the

Commissioner on appeal, *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Because Plaintiff's migraines might have been found to be medically equivalent to

Listing 11.02 had they been properly considered, (*see* Doc. 16 at 20

(summarizing)), remand is necessary.

### B. Mental Impairments

In determining whether a claimant with a mental illness meets a listed

impairment, the ALJ must follow a "special technique" to evaluate the claimant's

symptoms and rate her functional limitations. 20 C.F.R. § 404.1520a(a). The ALJ

must consider: (1) whether specific diagnostic criteria are met under Paragraph A

(the "A criteria"); and (2) whether specific impairment-related functional

limitations are present under Paragraphs B (the "B criteria") or C (the "C criteria").

20 C.F.R. § 404.1520a(b). Paragraph A substantiates the presence of a particular

mental disorder. App. 1. at § 12.00(A)(2)(a). Paragraphs B and C, on the other

hand, describe impairment-related functional limitations that are incompatible with

the ability to do any gainful activity. *Id.* § 12.00(A)(2)(b), (c).

Here, the ALJ determined that Plaintiff's mental impairments do not meet the requirements of 12.04, 12.06, or 12.15. AR 24. Plaintiff insists that Listing 12.15 (trauma and stressor-related disorders) is met based on Seyfert's opinions. (*See* Doc. 16 at 21–22 (citing AR 791–92, 935–37).) Because remand is required to reevaluate Seyfert's records as discussed above, the ALJ must revisit this conclusion as well.

## V.    RFC

The RFC is the most a claimant can do despite the functional limitations arising from her medically determinable impairments. 20 C.F.R. § 404.1545. Because the ALJ is required to reassess Seyfert's opinions, the RFC formulation may change on remand. Nonetheless, Plaintiff also argues that the RFC is in error because it does not reflect the ALJ's own assessment of the B criteria. That is addressed briefly below, as this issue could arise again on remand.

Pursuant to 20 C.F.R. § 404.1520a(c)(3) and (4), the ALJ identified and rated Plaintiff's impairments in four areas of functioning known as the "B criteria." To satisfy the B criteria, one's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. App. 1. at § 12.00(A)(2)(b). The four areas are: "[u]nderstand, remember or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage oneself." *Id.* "Extreme" means a claimant is "not able to function"

while "marked" means that functioning is "seriously limited." *Id.* § 12.00(F).  A

"moderate" limitation, on the other hand, means that a claimant's functioning in a

particular area  is "fair."  *Id.*  In this case, the ALJ determined that Plaintiff had a

"mild" limitation in her ability to adapt and manage herself and a "moderate"

limitation in the other three categories.  AR 24–25.  Plaintiff argues that the RFC

does not reflect any mental limitations despite these "moderate" findings,

specifically focusing on the fact the RFC states that Plaintiff can "maintain

attention, concentration, persistence and pace for such 8-hour workdays and 40-

hour workweeks."  AR 26.  This argument has some merit.

As it relates to the first two B criteria—understanding and applying

information and interacting with others—the RFC reflects reasonable limitations.

Specifically, the RFC states that Plaintiff can only carry out "simple" tasks and

should only have "occasional" interaction with the public and coworkers.  AR 26.

Thus, Plaintiff's argument fails on this front.  Nevertheless, Plaintiff is correct that

despite the assessment of moderate limitations for "concentration, persistence, and

pace," *see* AR 25, the RFC proposes a full workweek with no limitation, *see* AR

26.  Because that conclusion is internally inconsistent, it is error and must be

revisited on remand.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiff's request for remand

is GRANTED.  The Commissioner's decision is REVERSED, and this matter is

REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

proceedings consistent with this opinion.

DATED this _12_ day of January, 2022.

Donald W. Molloy, District Judge
United States District Court